UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRASERS GROUP PLC,

         Petitioner,

    -v-

JAMES GORMAN & MORGAN STANLEY,

         Respondents.

---

23 Misc. 348 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  On September 20, 2023, Frasers Group PLC ("Frasers Group") submitted an application for judicial assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary and testimonial evidence for use in a proceeding pending before the High Court of Justice in the Business and Property Courts of England and Wales (the "High Court"). Dkt. 1. Specifically, Frasers Group seeks to obtain testimony from James Gorman, the chairman and chief executive of the multinational investment bank and financial services company Morgan Stanley, and documents from Mr. Gorman, related to a margin call made by Morgan Stanley & Co. International PLC ("MSIP") to Saxo Bank on May 25, 2021 (the "Margin Call"). *See id.* For the reasons that follow, the Court denies the application for judicial assistance.

**I. Background**

  Frasers Group has brought civil claims against MSIP, a Morgan Stanley subsidiary, in the High Court. Dkt. 2 at 1. These claims arise from the Margin Call that MSIP imposed on Saxo Bank on May 25, 2021, which was based on certain option contracts. Dkt. 1 at 3. Saxo Bank responded to MSIP's Margin Call by making a margin call of its own on Frasers Group, which

was the underlying holder of the option contracts.[1] *Id.* At the time, MSIP did not know that Frasers Group was the underlying holder of the contracts. Dkt. 8 at 3. In its claims in the High Court, Frasers Group alleges that MSIP's Margin Call on Saxo Bank was arbitrary and capricious, and tortious, under English law. *Id.* at 3.

On September 20, 2023, Frasers Group applied in this Court for judicial assistance under § 1782. Dkt. 1. Frasers Group argued that deposing Mr. Gorman and obtaining documents he holds in his personal capacity related to the Margin Call will help it support its allegations in the English proceeding. It argued that the requested testimony and documents will help reveal the extent, if any, of Mr. Gorman's knowledge of the Margin Call; his involvement, if any, in the decisions to impose and maintain the Margin Call; and whether the decision to impose and maintain the Margin Call were guided by policies put in place by Morgan Stanley's leadership.

The Court directed a response from Mr. Gorman and Morgan Stanley. Dkt. 4. On September 29, 2023, Mr. Gorman and Morgan Stanley filed an opposition to the application. Dkt. 8. On October 3, 2023, Frasers Group submitted a reply. Dkt. 11. On October 5, 2023, the Court held a telephonic conference to discuss the application and hear arguments. Dkt. 4.

## II.  Applicable Legal Standards

Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." A district court has authority to grant a § 1782 application where: "(1) the person from whom discovery is sought resides (or is

---

[1] A margin call occurs when the value of an investor's securities, purchased with borrowed funds, declines to the point that their brokerage firm demands additional cash or securities be deposited to cover the margin loan. Margin trading involves buying securities with funds provided as a loan from the brokerage, with the investor providing just a percentage of the purchase price.

2

found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citation omitted).

Once these statutory requirements are met, a district court has discretion to grant or deny the application. *See Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015). This discretion must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 336 F.3d 79, 84 (2d Cir. 2004) (citation and internal quotation marks omitted). Courts must also consider the factors set out in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.

The *Intel* factors "are not to be applied mechanically." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). "A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id.*

## III. Discussion

This Court clearly has authority to grant Frasers Group's § 1782 application, as: (1) Mr. Gorman resides in this District; (2) Frasers Group seeks to use the discovery in a foreign proceeding; and (3) the application is made by Frasers Group, a party to the English litigation. *See Brandi-Dohrn*, 673 F.3d at 80. The Court, however, denies the application based on its holistic evaluation of the *Intel* factors and mindful that Mr. Gorman is a paradigmatic "apex witness."

Of the *Intel* factors, the Court finds that the first and fourth strongly support denying the application, whereas the second and third moderately favor granting it.

The first *Intel* factor asks whether the person from whom discovery is sought is a participant in the foreign proceeding. *See Intel*, 542 U.S. at 264. Although Mr. Gorman is not a party in the case before the High Court, MSIP is a party, and the High Court undisputedly can seek records from Mr. Gorman in his business capacity as a "document custodian," *see* Dkt. 8 at 4, thus permitting Frasers Group to obtain the requested documents from a party, MSIP, to the High Court proceeding. In fact, earlier in the litigation before the High Court, Frasers Group sought documents in Mr. Gorman's custody. Dkt. 7 at 3. However, when MSIP objected on relevance grounds, Frasers Group dropped the request, and elected not to pursue the issue with the High Court. *Id.* That Frasers Group made such a request—and withdrew it on its own with no indication that the High Court would deny it—strongly indicates that the High Court has the capacity to order the production of the very documents Frasers Group now seeks pursuant to § 1782. And MSIP, in objecting to the request for documents from Mr. Gorman before the High Court before it was withdrawn, did not rely on Mr. Gorman's status as a U.S. resident; it instead argued that the documents sought were irrelevant. *Id.*

4

Moreover, pressed at argument before this Court, MSIP confirmed that it "will not take the position in the English Proceeding that Morgan Stanley documents should not be disclosed on the ground that such documents are located in the United States." Dkt. 13. MSIP further confirmed that, to the extent that documents are sought in the High Court proceedings that may reside on Mr. Gorman's personal device(s) or in his home(s), it and Mr. Gorman would treat such documents as if in MSIP's custody, and not object on the ground that the documents could be said to be held in a personal capacity. Conference Transcript ("Conf. Tr.") at 39. Thus, should Frasers Group renew its application before the High Court to obtain the requested documents from Mr. Gorman, it will not be impeded by the facts that Mr. Gorman is not a direct participant in the foreign proceeding, that he lives in the United States, and that he might be claimed to hold responsive documents outside of Morgan Stanley's servers and facilities. To the extent Frasers Group seeks documents in Mr. Gorman's possession, this *Intel* factor disfavors the request.[2]

The second and third factors undisputedly support granting the application. England is generally receptive to § 1782 discovery requests. And MSIP and Mr. Gorman do not claim that Frasers Group, in pursuing discovery from Mr. Gorman, has circumvented any English proof-gathering restriction or other English policy. *Intel*, 542 U.S. at 264–65.

The fourth factor asks whether the discovery request is unduly intrusive or burdensome. This factor weighs heavily here. *Id.* at 265. As to Frasers Group's document request, it reprises a request it already made and voluntarily withdrew before the High Court, which not only had

---

[2] This factor is neutral as to Frasers Group's separate request to depose Mr. Gorman. Whether or not he was a party to that proceeding, the High Court lacks authority to order a deposition. *See* Conf. Tr. at 10 ("Depositions are not an option under English procedure.") (statement of Joseph Rome, Frasers Group's counsel).

5

the undisputed authority and capacity to adjudicate it, but unquestionably greater familiarity with the underlying litigation than does this Court.

And as to Frasers Group's request to depose Mr. Gorman, it is even more plainly and unjustifiably burdensome, so much so to require denial of this aspect of the § 1782 application. Because Mr. Gorman is chief executive officer of Morgan Stanley, requiring him to sit for a deposition would take time away from competing obligations. And, as its counsel confirmed in the conference with this Court, Frasers Group is unaware of any information linking Mr. Gorman to Frasers Group, or to MSIP's Margin Call on Saxo Bank. His relevance, if any, would stem from his involvement in what Frasers Group described as MSIP's general policy of protecting its financial interests through margin calls.

That the *Intel* factors, viewed as a whole, strongly disfavor Frasers Group's bid to depose Mr. Gorman is reinforced by his status as a quintessential "apex witness." Under the "apex witness" doctrine, courts give special scrutiny to requests to depose high-ranking corporate executives. *See Chevron Corp. v. Donziger*, No. 11 Civ. 691 (LAK) (JCF), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). A party seeking such a deposition must show that the corporate executive has "personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, No. MDL 1428 (SAS) (THK), 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006). Far from demonstrating that Mr. Gorman had unique personal knowledge of the May 25, 2021 Margin Call, Frasers Group has not adduced any evidence to that effect. Indeed, despite receiving extensive document discovery in the English proceeding, Frasers Group acknowledged to this Court that it has not uncovered any evidence of Mr. Gorman's involvement in the decision to make and maintain the Margin Call. It retreated instead to the theory that Mr. Gorman had been involved in formulating a

6

policy within MSIP favoring margin calls, which may have influenced the decision to make the Margin Call at issue here. But even as to that proposition, Frasers Group could muster only a single document, a transcript of a call in which a separate Morgan Stanley official can be read to state, in a single sentence, that "the CEO" was generically supportive of margin calls.[3] Conf. Tr. 14–15.

Without more, that evidence is too tenuous to demonstrate Mr. Gorman's personal role in connection with the margin call at issue, let alone his "unique personal knowledge." The apex witness doctrine therefore strongly disfavors authorizing his deposition. *See Harapeti v. CBS Television Stations Inc.*, No. 21 Misc. 680 (PAE), 2021 WL 3932424, at *3 (S.D.N.Y. Sept. 2, 2021); *see, e.g., Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023) (denying plaintiff's motion to compel deposition of chief executive of international investment firm with 400 employees where he did not have "personal and *unique* knowledge" of plaintiff's termination); *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL) (JCF), 2006 WL 468314, at *7 (S.D.N.Y. Feb. 28, 2006) (denying plaintiff's request to depose member of board of directors and chief executive of a publicly traded company because they lacked unique personal knowledge of the underlying events). As the apex witness line of authority reflects: "Courts must be vigilant so that CEOs . . . are not subjected to the burdens of discovery without a showing that they are likely to have information useful to the litigation that cannot fairly and with less burden be found elsewhere." *Harapeti*, 2021 WL 3932424, at *2.

---

[3] On the call, held May 28, 2021, between employees of Saxo Bank and Morgan Stanley, Morgan Stanley's Dominic Freemantle, who is described as the "Head of Equity," Dkt. 11 at 45, made the statement, in discussing the impetus for the Margin Call on Saxo Bank. But his statement does not indicate personal involvement by Mr. Gorman in the decision to make that Margin Call. Mr. Freemantle stated, instead: "I think it's more general than that and it's more around this type of business and a very clear edict coming down from our CEO around this type of business, and our inability to support it." Dkt. 2 at 26.

7


That interest is present here. And on the record at hand, Frasers Group can seek elsewhere the information it claims to be of interest. If indeed a broader corporate policy influenced MSIP's decision to undertake the Saxo Bank Margin Call, Frasers Group could, for example, pursue documents and/or testimony from the lower-ranking Morgan Stanley personnel who participated in the Margin Call decision and can account for its impetus.

For the foregoing reasons, the Court denies Frasers Group's application for judicial assistance pursuant to 28 U.S.C. § 1782.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: October 19, 2023
New York, New York